UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MUELLY SAM NELKIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:14-CV-41-TAV-CCS |
| | ) | |
| KNOX COUNTY, TENNESSEE, | ) | |
| ANTHONY RATHBONE, Officer with the | ) | |
| Knox County Sheriff's Department, and | ) | |
| JOHN DOE, Officer with the | ) | |
| Knox County Sheriff's Department, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action for alleged excessive force by law enforcement is before the Court on multiple motions: Motion of Defendant Anthony Rathbone in his Individual Capacity for Summary Judgment [Doc. 16], Motion of Knox County and All Defendants in their Official Capacity for Judgment on the Pleadings [Doc. 21], and Defendants' Motion to Dismiss for Violation of the Court's Scheduling Order and for Failure to Prosecute [Doc. 24].

Defendant Rathbone filed his motion for summary judgment on January 23, 2015, and almost two months later, plaintiff asked for an extension of time to respond [Doc. 22]. Plaintiff's counsel asserted that he is a solo practitioner with a busy practice and that he was unable to come into his office for a period of time due to many weather-related problems [*Id.*]. Defendants opposed an extension in light of plaintiff's pattern of non-

response in this case, and noted that the weather-related problems did not begin until after plaintiff's response deadline had passed [Doc. 23]. Plaintiff replied, asking for a thirty-day extension to respond to all pending motions [Doc. 25]. On that same day, defendants filed their motion to dismiss for violation of the Court's scheduling order and for failure to prosecute [Doc. 24]. Soon after, plaintiff responded to Officer Rathbone's motion for summary judgment [Doc. 26], to which defendant replied [Doc. 27]. Defendants later filed another motion to dismiss for failure to prosecute, noting plaintiff's failure to abide by other pre-trial deadlines [Doc. 28].

For the reasons set forth below, the Court will grant defendants' motions for summary judgment and for judgment on the pleadings, and will dismiss this case.

**I.     Background**

This § 1983 action alleges violations of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution [Doc. 1 ¶ 6]. Plaintiff claims that he was handcuffed by Officer John Doe "so tightly that he was in pain," that he complained to Officer Anthony Rathbone that the handcuffs were "too tight and cutting into his wrists," and that Officer Rathbone "disregarded the excessively tight handcuffs" [*Id.* ¶¶ 11–13]. Plaintiff believes that the officers' actions have caused him serious and permanent injury [*see id.*] and represents that his current wrist condition will require surgery [Doc. 26-1 ¶ 14].

At the time of the alleged incident, defendant Rathbone had been a patrol officer for the Knox County Sheriff's Office for over one year [*See* Doc. 16-1 ¶¶ 1–2]. On

2

February 3, 2013, Officer Rathbone served as the backup officer to Officer Kenneth Aken, who arrested plaintiff for driving under the influence and for possession of a firearm while intoxicated [*Id.* ¶ 2]. According to Officer Rathbone, he saw Officer Aken follow proper procedures to ensure the handcuffs were not too tight and saw him double lock the handcuffs to prevent them from tightening down on plaintiff's wrists [*Id.* ¶ 4]. Because Officer Aken had some equipment in the back seat of his vehicle, he brought plaintiff to Officer Rathbone's police cruiser [*Id.* ¶ 5].

According to plaintiff, almost immediately upon being left in the police car, his wrists began to hurt [Doc. 26-1 ¶ 7]. Plaintiff claims that "[t]he pain became so intense that [he] could not focus on anything else" and that he was left in the police car for about twenty minutes before Officer Rathbone came to check on him [*Id.*].

At this time, 3:55 a.m. according to the police cruiser video, plaintiff complained, for the first time, that the handcuffs were too tight [Doc. 16-1 ¶ 9; Doc. 18 (cruiser video)]. Plaintiff claims he informed Officer Rathbone that he was in "excruciating pain due to the handcuffs" [Doc. 26-1 ¶ 8]. From the cruiser video, however, it appears Officer Rathbone asked plaintiff if he was "good" and plaintiff stated, "No, they're not. Do they make the cuffs so tight?" Officer Rathbone responded, referring to Officer Aken, "he left one finger, buddy, it's where you're so big, man" [Doc. 18]. Plaintiff then stated, "they feel like they're cutting up my wrists" [*Id.*].[1] Officer Rathbone then

---

[1] Not all of plaintiff's statements are mentioned herein because some are difficult to understand. They appear to be along the same lines, however, as the statements mentioned.

3

responded, "the wagon will be here in a minute, buddy, and they'll take them off of ya and put you on another set" [*Id.*].

Prior to this dialogue with plaintiff, Officer Rathbone had radioed for transportation and was told that the transport van was on its way to his location [Doc. 16-1 ¶ 9]. Officer Rathbone claims he knew the transport officer would be arriving very soon and would replace Officer Aken's handcuffs with his own handcuffs [*Id.*]. In addition, Officer Rathbone claims that, from seeing Officer Aken apply the handcuffs, he believed that the handcuffs were not too tight and that, if plaintiff was experiencing pain, it was because his body type was causing strain on the handcuffs [*Id.* ¶ 8].[2] It appears undisputed that, after the parties' dialogue about the handcuffs, plaintiff did not complain again about his handcuffs [*See id.* ¶ 10; Doc. 26-1].

About three minutes after their dialogue, at 3:58 a.m., the transport van arrived and plaintiff was removed from Officer Rathbone's vehicle [*Id.* ¶ 11; Doc. 26-1 ¶ 9]. According to the transportation officer, he removed plaintiff from the back seat of Officer Rathbone's cruiser and replaced plaintiff's handcuffs with transportation handcuffs [Doc. 16-2 ¶ 3]. The transportation officer claims that the handcuffs were not excessively tight

---

[2] Officer Rathbone estimates that plaintiff was over six feet tall and weighed approximately 275 pounds [Doc. 16-1 ¶ 6]. He explains that, in his experience, "when large persons with broad shoulders are handcuffed they often believe the handcuffs are too tight when in fact it is the strain and pulling on the handcuffs from their shoulders that cause the handcuffs to hurt" [Doc. 16-1 ¶¶ 6]. Officer Rathbone states that he has been handcuffed in practice and that he perceived himself as approximately the same height and weight as plaintiff but smaller in the shoulders [*Id.* ¶ 7]. Accordingly, Officer Rathbone concludes that "[a] person without law enforcement experience and training would naturally believe in this situation that the handcuffs were 'too tight' when in reality they are not" [*Id.*; *see also id.* ¶ 6 (stating that "[l]oosening the handcuffs in this situation will do nothing to relieve their pain")].

4

and that he did not observe any injury to plaintiff's wrists [*Id.* ¶¶ 4–5]. Plaintiff disputes that his handcuffs were exchanged but does not appear to dispute that he did not complain to the transportation officer about any injury to his wrists or request medical care [*See* Doc. 16-2 ¶¶ 6–7; Doc. 26-1].

Plaintiff then was taken to the detention facility. According to the intake officer who medically screened plaintiff that day, plaintiff did not mention any injury to his wrists or request medical attention [Doc. 16-3 ¶ 2]. The intake officer also states that he did not observe any injury to plaintiff's wrists, that plaintiff answered "no" when asked whether he had any bleeding, bruises, or obvious pain or injury, and that plaintiff signed a form indicating that he had answered all questions truthfully [*Id.* ¶¶ 2-3]. Plaintiff claims that, due to head injuries he suffered during transport to the detention facility, "this period of time is a blur" and he does not remember signing any documents [Doc. 26-1 ¶¶ 10–11].

Plaintiff was released from jail on the day of his arrest [*See* Doc. 19 ¶ 8; Doc. 26-1 ¶ 12]. Upon release, plaintiff visited LeConte Medical Center, complaining of nausea, dizziness, vomiting, blurry vision, and right knee pain, but not of any injury to his wrists [Doc. 19 ¶ 8; Doc. 26-1 ¶ 12]. Plaintiff made a complaint to the Sheriff's Office of Professional Standards for his head injury [Doc. 19 ¶ 5]. On February 6, 2013, he was interviewed twice about his complaint but did not mention any injury to his wrists [*id.*]; submitted photographs of alleged injuries to his face and head but no photographs of his
5

wrists [*id.* ¶ 6]; and saw his primary care physician but did not relate any of his symptoms to handcuffing [*id.* ¶ 10].

Similarly, despite complaints involving his hands at later doctor visits, plaintiff did not mention any wrist injury or relate any of his symptoms to being handcuffed [*See id.* ¶ 11 (March 8, 2013, complaint about a motor vehicle accident that occurred the month before); *id.* ¶ 12 (April 30, 2013, complaint of numbness in right hand); *id.* ¶ 13 (May 13, 2013, complaint of constant tingling and pain in hand and fingers)]. Plaintiff eventually complained of a wrist injury on July 16, 2013, but attributed the injury to a motor vehicle accident that occurred in February 2013, not to being handcuffed [*Id.* ¶ 14]. But as defendants state, a July 25, 2013, medical record arguably relates symptoms of right hand numbness and pain to the handcuffing [*Id.* ¶ 15; Doc. 17 p. 7; Doc. 19-12 (July 25, 2013, medical record stating that plaintiff's chief complaint is right hand numbness and pain and noting plaintiff's belief that the condition "has been present since about 02/03/2013," when plaintiff "apparently had a head injury and had some handcuffs on")]. Accordingly, based on a review of plaintiff's medical records and the parties' briefing, it appears that plaintiff did not complain of any injury to his wrists until July 16, 2013, and did not attribute any symptoms to his handcuffing until July 25, 2013, almost six months after the arrest [Doc. 19 ¶¶ 14–15; Doc. 17 p. 7].

Then exactly one year after the arrest, plaintiff filed two lawsuits: the instant suit based on the handcuffing [Doc. 1] and another against Knox County and Officer John Doe in the Circuit Court for Knox County, Tennessee, for head injuries allegedly

6

Case 3:14-cv-00041-TAV-CCS Document 29 Filed 05/20/15 Page 6 of 20 PageID #: 225

sustained in the transport wagon on the day of his arrest [*see* Doc. 19-4 ¶ 8 ("During this transport, Plaintiff was violently thrown about and to the floor by the negligent, careless and reckless driving of . . . the individual driving the wagon.")].

## II.     Officer Rathbone's Motion for Summary Judgment on Qualified Immunity

### A.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty*

7

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

B.  Analysis

As noted at the outset, plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that, by disregarding his excessively tight handcuffs, Officer Rathbone violated his constitutional right to be free from excessive force [Doc. 1 ¶¶ 4–6, 13; Doc. 26 p. 4]. "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401

8

(6th Cir. 2009).³  However, "[n]ot all allegations of tight handcuffing . . . amount to excessive force." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005).

In his motion for summary judgment, Officer Rathbone claims he is entitled to qualified immunity. A defendant enjoys qualified immunity on summary judgment unless the facts alleged and the evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the defendant violated a clearly established constitutional right. *Morrison*, 583 F.3d at 400. Specifically, "[i]n order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Id.* at 401 (citation and internal quotation marks omitted). "And, even when a plaintiff makes this showing, a defendant officer may still be entitled to summary judgment on the basis of qualified immunity if it would not be clear to a reasonable officer that he was violating the plaintiff's rights." *O'Malley v. City of Flint*, 652 F.3d 662, 671 (6th Cir. 2011); *see also id.* (noting that the Supreme Court has explained "that courts must ask 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted'" (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009))).

---

³ While plaintiff's complaint also asserts violation of the Eighth Amendment [Doc. 1 ¶ 6], that amendment was not discussed in the parties' briefs and does not appear to be applicable in this case.

Viewing the facts and all inferences in the light most favorable to plaintiff, and considering the arguments made in plaintiff's untimely response, the Court finds that plaintiff has not created a genuine dispute that Officer Rathbone ignored plaintiff's complaints. And even assuming plaintiff could make this showing, the Court finds that it would not be clear to a reasonable officer that Officer Rathbone's conduct was unlawful in the situation he confronted.

It is undisputed that, after performing field sobriety tests, plaintiff was arrested for driving under the influence and placed in the back seat of a police cruiser [Doc. 1 ¶ 8; Doc. 26-1 ¶¶ 5–6]. Approximately twenty minutes later, Officer Rathbone came back to the vehicle to check on plaintiff and plaintiff complained that the handcuffs were too tight [Doc. 26-1 ¶¶ 7–8]. As plaintiff states, "I informed Officer Rathbone that I was in excruciating pain due to the handcuffs. I again told him how much pain I was in, but he told me that the handcuffs would be changed when I was transferred to a transportation vehicle" [Doc. 26-1 ¶ 8]. Plaintiff's recollection appears somewhat inconsistent, however, with the dialogue in the cruiser video, as detailed at the outset of this opinion. Nonetheless, it appears undisputed that plaintiff did not ask Officer Rathbone to loosen the handcuffs, that Officer Rathbone, at the time he responded to plaintiff's complaints, knew that the transport vehicle would arrive soon, and that the transport vehicle arrived approximately three minutes after plaintiff's complaints.

Accordingly, and having reviewed the case law and the cruiser video, it does not appear that a reasonable juror could conclude that Officer Rathbone "ignored" plaintiff's

complaints about the handcuffs. *Cf. Morrison*, 583 F.3d at 402 (finding second prong of the test to be satisfied when arrestee and another individual testified that the officer disregarded the arrestee's complaint of tightness and refused to loosen them, and the officer allegedly stated that he could place them on "as tight as he wanted to and that's how they were staying"); *Burchett v. Kiefer*, 310 F.3d 937, 944–45 (6th Cir. 2002) (finding that officers did not ignore any plea that the handcuffs were too tight when the arrestee complained only once, and on that occasion, the officer immediately offered to remove the handcuffs if the arrestee would behave); *see also Burchett*, 310 F.3d at 945 ("[The officer's] prompt response when [the arrestee] finally did complain distinguishes this case from those in which we have found constitutional violations. Until they had notice that the handcuffs were too tight, the officers were unaware of the problem. Once [the arrestee] gave them notice, they immediately acted."). Here, immediately upon plaintiff's complaint, Officer Rathbone explained, "he left one finger, buddy, it's where you're so big, man." Moments later, when plaintiff continued his complaint, Officer Rathbone informed plaintiff that the transport officer would be arriving shortly and would exchange his handcuffs. Viewing all facts and inferences in the light most favorable to plaintiff, the Court finds that plaintiff has not raised a genuine dispute that Officer Rathbone ignored or disregarded plaintiff's complaints.

Moreover, the cases relied upon by plaintiff are distinguishable. Plaintiff contends that his case is "indistinguishable" from *Morrison* [Doc. 26 p. 5]. In *Morrison*, however, the officer who was denied qualified immunity tackled the arrestee from behind and

11

handcuffed her hands behind her back and allegedly refused to loosen the handcuffs, stating that he could place them on "as tight as he wanted to and that's how they were staying." *Morrison*, 583 F.3d at 398, 402–404 (finding genuine issue of material fact regarding each element of the handcuffing test); *see also Standifer v. Lacon*, 587 F. App'x 919, 923–24 (6th Cir. 2014) (distinguishing *Morrison* "because Standifer's handcuffs remained on her wrists for mere minutes, compared to Morrison's forty to fifty minutes of pain after . . . ask[ing] to loosen the handcuffs").

The other cases relied on by plaintiff, *Martin* and *Kostrzewa*, are similarly distinguishable. In *Martin*, the arrestee alleged that he was handcuffed too tightly by the officer despite his complaints that his hands were becoming numb, that he again complained to the officer in the police cruiser that his hands were numb and swelling, and that the handcuffs were not loosened by the officer until after a twenty-minute ride to the jail and a fifteen-minute wait in a holding cell. *Martin v. Heideman*, 106 F.3d 1308, 1310, 1313 (6th Cir. 1997) (holding that a genuine issue of material fact existed as to whether the police officer used excessive force under the circumstances). In *Kostrzewa*, the arrestee alleged he repeatedly complained that the handcuffs were too tight and painful; that the officers, despite his complaints, amused themselves by driving recklessly so as to toss the arrestee around the back seat of the car; that the officers, after arriving at the station and searching for a larger set of handcuffs to fit the arrestee, whose wrists had become swollen, decided to handcuff him again on their way to the hospital; and that, after the doctor recommended elevating his wrists and applying ice to reduce swelling,

12

the officers again handcuffed him. *Kostrzewa v. City of Troy*, 247 F.3d 633, 637–38, 640 (6th Cir. 2001) (reversing the district court's dismissal of the officers' 12(b)(6) motion). The alleged actions of the officers in the aforementioned cases are not analogous to the actions of Officer Rathbone.[4]

Having reviewed relevant case law, the Court finds that this case is more similar to *O'Malley v. City of Flint* and *Fettes v. Hendershot*, 375 F. App'x 528, 533 (6th Cir. 2010), cases where the Sixth Circuit found that defendant officers were entitled to qualified immunity on claims of excessive force regarding handcuffing. In *O'Malley*, the court reasoned that, while the arrestee told the defendant officer that his handcuffs were too tight, the arrestee did not ask the officer to loosen the handcuffs, did not have an obvious physical injury, and was handcuffed for only about two minutes before other officers assumed custody of the arrestee, at which point the defendant officer had no more contact with the arrestee. *See O'Malley*, 652 F.3d at 666, 671–72.

In *Fettes*, the arrestee complained that the handcuffs "were much too tight and that they were hurting [him]." 375 F. App'x at 533. In response, one of the officers asked if the arrestee had a medical problem. *Id.* When the arrestee answered that he was sixty four years old and had bad knees, the officer stated, "Don't worry about it. We have a 10-minute drive." *Id.* The arrestee claimed that he told the officer several times that the handcuffs were hurting and that each time the officer responded, "Well, you don't have

---

[4] Though the instant case, like *Kostrzewa*, involves allegations of a dangerous transport ride [Doc. 26-1 ¶ 10], there is no allegation that Officer Rathbone was involved in that transport. Therefore, the Court views that allegation in *Kostrzewa* as a distinguishing factor, rather than a similarity that is relevant to the instant motion, as plaintiff contends [*See* Doc. 26 p. 4].

13

long, Bub. We only have a 10-minute drive." *Id.* After the arrestee arrived at the police station and was searched, the handcuffs were removed. *Id.* at 531. Accepting this version of the facts, the court held that "a reasonable officer would not know that the failure to respond to a complaint about tight handcuffs during a ten-minute ride to the police station violates the Constitution." *Id.* at 533. The Sixth Circuit noted that "the short duration of the trip, adherence to police handcuff protocol, and absence of any egregious, abusive, or malicious conduct supports the reasonableness of the officers' conduct." *Id.* In addition, the court distinguished the case from *Morrison*, *Martin*, and *Kostrzewa* by stating that the officers in *Fettes* "acted without malice and with reason— they declined to loosen the handcuffs in light of the short, ten-minute transport to the police station." *Id.* at 533–34.

In this case, Officer Rathbone promptly responded to plaintiff's complaints, he anticipated the arrival of the transport, and the transport in fact arrived a few minutes later. Officer Rathbone stated that he observed Officer Aken follow proper procedures to ensure the handcuffs were not too tight, and there is no indication of egregious, abusive, or malicious conduct involving Officer Rathbone. Plaintiff claims that the dispute over whether his handcuffs were exchanged when the transport officer arrived creates a genuine dispute of material fact for purposes of Officer Rathbone's liability [*See* Doc. 26 p. 5]. The Court disagrees. *See O'Malley*, 652 F.3d at 666, 671–72 (reasoning that, after the arrestee's complaint of tightness, the arrestee remained handcuffed for about two

minutes or less before other officers assumed custody of the arrestee, at which point the defendant officer had no more contact with the arrestee).

In sum, having reviewed the parties' arguments, the cruiser video, and relevant law, the Court cannot say that it would be clear to a reasonable officer that Officer Rathbone's conduct was unlawful in the situation he confronted. *See O'Malley*, 652 F.3d at 672 ("'[Sixth Circuit] precedents fail to notify officers that any response to a complaint of tight handcuffing other than an immediate one constitutes excessive force'" (quoting *Fettes*, 375 F. App'x at 533)); *Fettes*, 375 F. App'x at 533 (explaining that "a constitutional requirement obligating officers to stop and investigate each and every utterance of discomfort and make a new judgment as to whether the handcuffs are 'too tight' is neither reasonable nor clearly established"). Accordingly, the Court finds that Officer Rathbone is entitled to qualified immunity.

### III. Defendants' Motion for Judgment on the Pleadings

In addition to making claims against individual officers, plaintiff alleges that "Knox County has failed to adequately train officers in the use of handcuffs and by this failure has allowed Plaintiff to be injured" and that "Knox County's failure to properly train and discipline officers who use excessive handcuffing techniques has become a pattern and practice within the Knox County Sheriff's Department and subjects the County to municipal liability" [Doc. 1 ¶¶ 14–15]. The complaint also attempts to impose respondeat superior liability by alleging that Officers Rathbone and John Doe, "as agents of Knox County and Knox County Sheriff's Department," violated plaintiff's rights [*Id.*

15

¶¶ 6–7]. Defendants have moved to dismiss these claims on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure [Doc. 21].

"'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1107–08 (6th Cir. 2012) (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). "'A motion brought pursuant to Rule 12(c) is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* at 1108 (quoting *Tucker*, 539 F.3d at 549). The Sixth Circuit also has summarized the standard as, "to survive a Rule 12(c) motion to dismiss, the well-pled allegations (taken as true) must raise a right to relief above the speculative level but need not go beyond 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Stafford v. Jewelers Mut. Ins. Co.*, 554 F. App'x 360, 370 (6th Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

As an initial matter, "[§ 1983] does not permit a municipal entity to incur liability under a theory of *respondeat superior*." *Garner v. City of Memphis*, 576 F. App'x 460, 462 (6th Cir. 2014). A municipal entity "may only be held liable under § 1983 where 'its policy or custom causes the constitutional violation in question.'" *Id.* (emphasis in original) (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005)); *see also City of Canton v. Harris*, 489 U.S. 378, 385, 388–89 (1989) (affirming that a

16

municipality "can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue" in that its policies or customs are the moving force behind the constitutional violation) (emphasis in original).

"'[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Amerson v. Waterford Twp.*, 562 F. App'x 484, 490 (6th Cir. 2014) (quoting *City of Canton*, 489 U.S. at 388). "Proving deliberate indifference for failure to train 'typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures.'" *Id.* (quoting *Miller*, 408 F.3d at 815).

Here, the Court finds that plaintiff's complaint does not allege adequately deliberate indifference or any custom, policy, or practice that caused the alleged constitutional violation—the alleged use of excessive force in handcuffing plaintiff. *Cf. Kostrzewa*, 247 F.3d at 644–45 (6th Cir. 2001) (reversing district court's 12(b)(6) dismissal, reasoning that "plaintiff alleged facts in his complaint which establish this direct link [between a policy and the alleged constitutional deprivation], stating that [the officers], upon hearing his complaints that the handcuffs were too tight and too small for his wrists, told him that, pursuant to the City of Troy's policy, they were required to handcuff all detainees"). Plaintiff has not pointed to any official or unwritten policy or to any specific defect in training, or suggested, for example, that the number of handcuffing incidents in Knox County is greater than is to be expected from a properly-trained

17

agency. In sum, the Court finds that plaintiff has not raised a right to relief above the speculative level and will dismiss his claims against Knox County and against the defendant officers in their official capacities. *See Petty v. Cnty. of Franklin*, 478 F.3d 341, 348 (6th Cir. 2007) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")); *Newby v. Sharp*, No. 3:11-CV-534, 2012 WL 1230764, at *4 (E.D. Tenn. Apr. 12, 2012) ("[I]n a suit such as this, where plaintiff has sued the sheriff and officers of the sheriff's office in their official capacities as well as the County itself, the official capacity claims are redundant.").[5]

## IV. *Sua Sponte* Dismissal of John Doe Defendant

Finally, the Court raises *sua sponte* the statute of limitations as it relates to the John Doe defendant. The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Tennessee's statute of limitations for personal injury claims and for claims brought under federal civil rights statutes such as § 1983 is one year. *See* Tenn. Code Ann. § 28–3–104(a); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). The statute of limitations generally begins to run when "'the plaintiff

---

[5] The Court notes that plaintiff's failure-to-train claims also fail in light of the Court's grant of summary judgment and its dismissal of the John Doe defendant. *See Gumble v. Waterford Twp.*, 171 F. App'x 502, 508 (6th Cir. 2006) (citing *May v. Franklin Cnty. Comm'rs*, 437 F.3d 579, 586 (6th Cir. 2006) (holding that there can be no § 1983 liability for failure to train when plaintiff has not shown that the individual defendants violated plaintiff's constitutional rights)).

18

knows or has reason to know of the injury which is the basis of the action.'" *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 307 (6th Cir. 2010) (quoting *Kuhnle Bros., Inc. v. Cnty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). The Court looks "'to what event should have alerted the typical lay person to protect his or her rights.'" *Eidson*, 510 F.3d at 635 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

Regardless of whether the Court looks to the date of plaintiff's arrest, February 3, 2013, or to the date plaintiff arguably first attributes his conditions to the handcuffing, July 25, 2013, more than a year has passed since those dates. And the naming of a John Doe defendant in plaintiff's February 3, 2014, complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant. *See Cross v. City of Detroit*, No. 06-11825, 2008 WL 2858407, at *1 (E.D. Mich. July 23, 2008) (citing *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3rd Cir. 2003)). Plaintiff has not attempted to amend his complaint to name the John Doe defendant, and the Court will dismiss *sua sponte* and with prejudice plaintiff's claims against the John Doe defendant. *See id.* (dismissing *sua sponte* and with prejudice plaintiff's claim against John Doe police officer for civil rights violations because plaintiff "did not seek leave to amend the Complaint to name the John Doe defendant prior to the expiration of the statute of limitations"); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (holding that Rule 15(c) of the Federal Rules of Civil Procedure offers no remedy when, like here, plaintiff "simply did not know whom to sue or opted not to find out within the limitations

period" and "waited until the last day of the . . . limitations period to file his complaint, [which] left no time to discover the identity of his arresting officers within the relevant time"); *see also Smith*, 476 F. App'x at 69 (stating that Rule 15(c) "allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe'").

V.  **Conclusion**

Because plaintiff's response to the summary judgment motion has been considered by the Court, the Court will **GRANT** plaintiff's motion for extension of time [Doc. 22]. For the reasons stated herein, the motions for summary judgment [Doc. 16] and for judgment on the pleadings [Doc. 21] will be **GRANTED**, and all claims against all defendants will be **DISMISSED**. Accordingly, defendants' motions to dismiss for failure to prosecute [Docs. 24, 28] and defendants' motion in limine [Doc. 20] will be **DENIED as moot**. The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

20